```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KOSHER SKI TOURS INC.,                              :
                            Plaintiff,              :
                                                    :         OPINION AND ORDER
v.                                                  :
                                                    :         20 CV 9815 (VB)
OKEMO LIMITED LIABILITY COMPANY,                    :
                            Defendant.              :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Kosher Ski Tours Inc. brings this action against defendant Okemo Limited Liability Company ("Okemo"), alleging breach of contract.[1]

Now pending is plaintiff's motion for leave to amend and supplement the complaint pursuant to Rule 15. (Doc. #59).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

I. The Original Complaint

Plaintiff "markets and operates group ski tours and vacations." (Doc. #1-1 ("Compl.") ¶ 10). It principally serves Orthodox Jews.

Okemo owns and operates a ski resort in Vermont.

Plaintiff contends it has offered customers ski packages at Okemo's resort since 2014. These packages include ski lift tickets and lodging at Okemo, which plaintiff purchases from Okemo at a group discount, as well as kosher food.

---

[1] The action was originally commenced in Supreme Court, Rockland County, and removed to this Court on November 20, 2020.

1

Plaintiff alleges it entered into an agreement with Okemo dated December 27, 2019, which it calls the "Holiday Agreement." (Compl. ¶ 12; see id. Ex. 1). Pursuant to the Holiday Agreement, plaintiff agreed to pay a $300 nonrefundable deposit, and Okemo agreed to reserve 492 room nights between December 10 and December 14, 2020, and to sell ski lift tickets to plaintiff at a group rate.

Plaintiff paid the deposit. Plaintiff alleges, however, that Okemo notified plaintiff via email on September 18, 2020, that the agreement was terminated in light of the ongoing COVID-19 pandemic.

In its original complaint, plaintiff asserted one cause of action: breach of contract. Namely, plaintiff alleges Okemo's termination of the Holiday Agreement was a material breach and anticipatory repudiation of the contract.

II.     The Proposed Amended and Supplemented Complaint

The Court issued a Civil Case Discovery Plan and Scheduling Order on January 15, 2021, which established a deadline of February 16, 2021, for the parties to move to amend pleadings or to join additional parties. (Doc. #16 ¶ 3).

On March 2, 2021, plaintiff informally sought leave to supplement its complaint to assert claims arising from the breach of another agreement between it and Okemo, which it calls the "Standing Agreement." (Doc. #17; see Doc. #61-1 ("Proposed Am. Compl.") Ex. 1). The Court directed plaintiff to file a formal motion (Doc. #20), and plaintiff did so on March 19, 2021. (Doc. #23). On July 28, 2021, after the motion was fully submitted, plaintiff moved again to amend and supplement its complaint, this time to assert discrimination claims based on information adduced in discovery. (Doc. #59).

Plaintiff's proposed amended and supplemented complaint includes six new claims, falling into two categories.

In the first category, plaintiff seeks to supplement its complaint with allegations concerning Okemo's breach of the Standing Agreement during the pendency of this lawsuit. Plaintiff alleges that, under the Standing Agreement, Okemo agreed to offer significant group discounts to plaintiff for three years. Plaintiff further alleges Okemo refused to accept reservations from plaintiff in breach of the Standing Agreement. With respect to these allegations, plaintiff seeks to assert claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

In the second category, plaintiff contends it found evidence in discovery that Okemo's stated reason for its termination of the Holiday Agreement and breach of the Standing Agreement—the COVID-19 pandemic—was pretext for animus against Jews. To that end, plaintiff seeks to assert claims for violations of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the Vermont Fair Housing and Public Accommodations Act (the "VPAA").

**DISCUSSION**

I.   Leave to Amend and Supplement

Rule 15(a)(2) provides the Court "should freely give leave" to amend a complaint "when justice so requires." Rule 15(d) provides the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

The Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

>by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962).[2]  This standard also applies to motions for leave to supplement pleadings.  Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).

An amended or supplemented pleading is futile when, as a matter of law, the proposed complaint would not survive a Rule 12 motion, such as a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted or a Rule 12(b)(1) motion for lack of subject matter jurisdiction.  Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012) (Rule 12(b)(6)); Bandler v. Town of Woodstock, 832 F. App'x 733, 735–36 (2d Cir. 2020) (summary order) (Rule 12(b)(1)).

To survive a Rule 12(b)(6) motion, the allegations in a proposed complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557–58 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

To survive a Rule 12(b)(1) motion, the allegations in the proposed complaint must demonstrate, among other things, that plaintiff possesses Article III standing to seek the relief requested.  Conn. Parents Union v. Russell-Tucker, 8 F.4th 167, 172 (2d Cir. 2021).  A plaintiff

---

[2]     Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

must demonstrate standing for each form of relief sought.  See City of Los Angeles v. Lyons, 461 U.S. 95, 111–12 (1983).

To allege Article III standing, a plaintiff must plausibly show it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021).  In other words, even if "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," courts still must evaluate whether that person has suffered "concrete harm."  Id.

In addition, Rule 16(b)(4) applies when a party moves to amend a pleading after a court-ordered deadline to do so has expired.  See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").  As a result, when a motion to amend a pleading is made after the deadline, "the lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause."  Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009).  "Whether good cause exists turns on the diligence of the moving party."  Id. at 335.  Rule 16(b)(4) does not apply to Rule 15(d) motions to supplement pleadings.  Mason Tenders Dist. Council v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 36 & n.10 (S.D.N.Y. 2016).

II.     Plaintiff's Proposed Contract Claims

Plaintiff seeks to supplement its complaint with allegations concerning Okemo's breach of the Standing Agreement during the pendency of this lawsuit and to assert two claims arising

5

from the purported breach of the agreement. Okemo argues these claims are futile because the Standing Agreement is not an enforceable contract and, even if it is, plaintiff has failed to state claims upon which relief can be granted.

A.  Enforceability

Okemo first contends the Standing Agreement is unenforceable for lack of consideration and indefiniteness.

The Court disagrees.

To prove the existence of an enforceable agreement, "plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." Kasowitz, Benson, Torres & Friedman, LLP v. Reade, 98 A.D.3d 403, 404 (1st Dep't 2012), aff'd, 20 N.Y.3d 1082 (2013).[3]

"Consideration consists of either a benefit to the promisor or a detriment to the promisee. It is enough that something is promised, done, forborne, or suffered by the party to whom the promise is made as consideration for the promise made to him or her." Dee v. Rakower, 112 A.D.3d 204, 210 (2d Dep't 2013). An implied promise, for example, is sufficient consideration for an enforceable contract. Wood v. Lucy, Lady Duff Gordon, 222 N.Y. 88, 90–91 (1917).

Any "manifestation of mutual assent" must be "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Express Indus. & Terminal

---

[3] The parties have consented to the application of New York law to the Standing Agreement. That is, both sides brief New York law without engaging in any choice-of-law analysis. In a diversity case, the Court must apply the choice-of-law rules of the forum state to determine which state's substantive law should be applied. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003). In other words, by briefing these issues under New York law, the parties "consented to the application of the law of the forum state." Id.

Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d 584, 589 (1999).  In other words, to be enforceable, an agreement must also be definite, that is, "reasonably certain in its material terms."  Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d 475, 482 (1989). "[T]he terms of a contract do not need to be fixed with absolute certainty to give rise to an enforceable agreement."  Kolchins v. Evolution Mkts., Inc., 31 N.Y.3d 100, 107 (2018).  Instead, the New York Court of Appeals has warned that "conclu[ding] that a party's promise should be ignored as meaningless is at best a last resort."  Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d at 483.

First, drawing all inferences in the proposed complaint in favor of plaintiff, plaintiff has plausibly alleged the Standing Agreement is supported by consideration.  That is, plaintiff plausibly alleges that, in exchange for Okemo's promise to provide discounted rates for lodging and ski lift tickets during certain time frames, plaintiff made an implied promise to book lodging and ski lift tickets during those time frames.  (See Proposed Am. Compl. ¶ 72 ("The mutual exchange of promises in the Standing Agreement was sufficient consideration.")); Wood v. Lucy, Lady Duff Gordon, 222 N.Y. at 91.

Second, plaintiff plausibly alleges the Standing Agreement is definite.

For one, the plain language of the Standing Agreement indicates both parties intended to be bound by its terms.  The first line of the agreement states:  "[w]e are pleased to offer you the following lodging concessions from date of signed agreement through April 2022."  (Proposed Am. Compl. Ex. 1, at 1 (emphasis added)).  The last section of the agreement states the offer "will be deemed to be accepted" after the agreement is signed by a representative of both parties, and representatives of both parties did so.  (Id. at 3).  Because of this, invalidating the agreement

7

"is at best a last resort."  Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d at 483.

For another, plaintiff plausibly alleges the Standing Agreement is "reasonably certain in its material terms."  Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp., 74 N.Y.2d at 482.  As pleaded in the proposed new complaint, the Standing Agreement memorializes Okemo's express promise to provide group discounts to plaintiff during certain time frames in exchange for plaintiff's implied promise to make group reservations during those time frames.  The Standing Agreement further sets forth "specific terms for deadlines for reservation . . . and how payment should be made for any order."  (Proposed Am. Compl. ¶ 21).  This is sufficiently definite for the purposes of a Rule 12(b)(6) motion.

Accordingly, the Court concludes plaintiff plausibly pleads the Standing Agreement is an enforceable contract.

      B.     Breach of Contract

Next, Okemo contends plaintiff's breach of contract claim (Second Cause of Action) is futile because plaintiff fails to state a claim for breach of an express contractual provision.

The Court agrees.

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).  A breach of contract claim must be dismissed if the plaintiff fails to show a "specific provision" of the contract was breached.  Trump on the Ocean, LLC v. State, 79 A.D.3d 1325, 1326 (3d Dep't 2010).

Plaintiff alleges Okemo breached the Standing Agreement by denying plaintiff's requests to reserve rooms and purchase ski lift tickets in January, February, and March 2021. Plaintiff, however, pleads no express provision of the Standing Agreement which requires Okemo to honor all reservation requests without qualification. Nor is there such a provision in the Standing Agreement, which is annexed to the proposed new complaint.

Accordingly, plaintiff's motion to supplement the complaint is denied with respect to the Second Cause of Action.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

Lastly, the Court concludes plaintiff's claim for breach of the implied covenant of good faith and fair dealing (Third Cause of Action) arising from the Standing Agreement is not futile.

Under New York law, "[i]mplicit in every contract is a covenant of good faith and fair dealing which encompasses any promise that a reasonable promisee would understand to be included." 25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co., 144 A.D.3d 665, 667 (2d Dep't 2016). "The implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement." 1357 Tarrytown Rd. Auto, LLC v. Granite Props., LLC, 142 A.D.3d 976, 977 (2d Dep't 2016).

Plaintiff's allegations are sufficient to state a claim for breach of the implied covenant of good faith and fair dealing. Plaintiff alleges that, after it attempted to make reservations pursuant to the Standing Agreement, "Okemo gave [plaintiff] the runaround" and generally responded in bad faith to plaintiff's detriment. (Proposed Am. Compl. ¶ 53; see also id. ¶¶ 80–81). In other words, plaintiff alleges Okemo "act[ed] in a manner that . . . deprive[d] [plaintiff] of the right to

receive the benefits of their agreement." 1357 Tarrytown Road Auto, LLC v. Granite Props., LLC, 142 A.D.3d at 977.

Accordingly, plaintiff's motion for leave to supplement the complaint is granted with respect to the Third Cause of Action.

III.     Plaintiff's Proposed Discrimination Claims

Plaintiff also seeks to amend and supplement its complaint to assert discrimination claims pursuant to Title II of the Civil Rights Act of 1964 (Fourth Cause of Action), 42 U.S.C. § 1981 (Fifth Cause of Action), 42 U.S.C. § 1982 (Sixth Cause of Action), and the VPAA (Seventh Cause of Action). Each is addressed in turn below, as well as whether plaintiff was diligent in seeking leave to amend.

A.     Diligence

Plaintiff contends it was diligent in seeking to amend its complaint.

The Court agrees, and as a result concludes there exists good cause to modify the scheduling order in this case.

The deadline for the parties to move to amend pleadings or join additional parties was February 16, 2021. (Doc. #16 ¶ 3). Plaintiff first moved for leave to amend the complaint on July 28, 2021, five months after the deadline had expired. (Doc. #54). Moreover, although the parties sought four extensions of the case schedule, they never sought an extension of this deadline. (Docs. ##44, 53, 68, 75). Thus, plaintiff's motion for leave to amend the complaint was untimely.

Because plaintiff's motion was untimely, the Court must balance "the lenient standard under Rule 15(a) . . . against the requirement under Rule 16(b) that the Court's scheduling order

shall not be modified except upon a showing of good cause." Holmes v. Grubman, 568 F.3d at 334–35.

Plaintiff contends it learned the basis for its proposed discrimination claims in June 2021. Because plaintiff first sought leave to amend the complaint approximately one month later, the Court concludes plaintiff was diligent in seeking leave to amend the complaint and there is good cause to modify the scheduling order in this case. See, e.g., Mason Tenders Dist. Council v. Phase Constr. Servs., Inc., 318 F.R.D. at 37–38.

Accordingly, the Court turns to the merits of plaintiff's proposed discrimination claims.

B.  Title II of the Civil Rights Act

Okemo contends plaintiff's claim under Title II of the Civil Rights Act of 1964 (Fourth Cause of Action) is futile for lack of standing.

The Court agrees.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014). To establish standing in federal court, a litigant must demonstrate, among other things, he or she has suffered an injury. Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998).

Only injunctive relief is available under Title II. Newman v. Piggie Park Enters., Inc., 390 U.S. 400, 402 (1986) (per curiam). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Peck v. Baldwinsville Cent. Sch. Dist., 351 F. App'x 477, 479 (2d Cir. 2009) (summary order) (quoting Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d at 344); accord City of Los Angeles v. Lyons, 461 U.S. at 105–07.

11

Plaintiff does not adequately allege a real threat of future injury sufficient to establish Article III standing to seek injunctive relief. Plaintiff alleges only past incidents of discrimination, not "that the discrimination is continuous or ongoing." Joseph v. N.Y. Yankees P'ship, 2000 WL 1559019, at *5–6 (S.D.N.Y. 2000).

Accordingly, plaintiff's motion to amend and supplement the complaint is denied with respect to the Fourth Cause of Action.

C.   Sections 1981 and 1982

Okemo contends plaintiff's claims under 42 U.S.C. §§ 1981 (Fifth Cause of Action) and 1982 (Sixth Cause of Action) are futile for lack of standing and, even if plaintiff had standing, the claims are futile because the statutes do not prohibit discrimination against Jews.

The Court disagrees.

1.   Legal Standard

Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

Section 1982 provides: "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

Sections 1981 and 1982 include private rights of action arising from private acts of discrimination. Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459–60 (1975); Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 238–39 (1969).

To state a claim under Section 1981 or 1982, a plaintiff must allege sufficient facts to demonstrate "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute." Tuaha Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 267 (E.D.N.Y. 2009). Moreover, a plaintiff must allege that, "but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).

It is unsettled in the Second Circuit whether a corporation may qualify as "a member of a racial minority" and thus may assert Section 1981 or Section 1982 claims.

In Hudson Valley Freedom Theater, Inc. v. Heimbach, the Second Circuit held a nonprofit corporation possessed standing to pursue race discrimination claims pursuant to the Equal Protection Clause and Title V of the Civil Rights Act of 1964. 671 F.2d 702, 706 (2d Cir. 1982) ("When a corporation meets the constitutional test of standing . . . prudential considerations should not prohibit its asserting that defendants, on racial grounds, are frustrating specific acts of the sort which the corporation was founded to accomplish."). Drawing from this proposition, as well as decisions by other circuits, district courts within the Second Circuit have concluded corporations may possess standing to assert claims under Sections 1981 and 1982. See, e.g., Ctr. for Transitional Living, LLC v. Advanced Behav. Health, Inc., 2021 WL 3409512, at *7–8 (D. Conn. Aug. 4, 2021); Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D v. Tightseal Constr. Inc., 2018 WL 3910827, at *6 n.6 (S.D.N.Y. Aug. 14, 2018); John & Vincent Arduini Inc. v. NYNEX, 129 F. Supp. 2d 162, 168–69 (N.D.N.Y. 2001). Specifically, these courts

13

determined minority-owned corporations have an "imputed racial identity" and thus may bring race discrimination claims.

  2. <u>Analysis</u>

The Court finds plaintiff has standing to assert claims under Sections 1981 and 1982.

First, the Court adopts the reasoning of other courts within this Circuit and concludes that a corporation may have standing to complain of racial discrimination because of its imputed racial identity. <u>Cf</u>. <u>Hudson Valley Freedom Theater, Inc. v. Heimbach</u>, 671 F.2d at 706.

Next, the Court finds plaintiff plausibly alleges such an imputed racial identity. In its proposed new complaint, plaintiff alleges its principal is Jewish and customers are Orthodox Jews. Plaintiff further alleges it was a party to two contracts with Okemo—the Holiday Agreement and the Standing Agreement—that Okemo terminated and breached, respectively, because Okemo mistrusted plaintiff's principal and its customers because they are Jewish. (Proposed Am. Compl. ¶¶ 35–38, 96–97; <u>see also</u> <u>id</u>. Ex. 8). Taking these allegations as true, the Court finds plaintiff has sufficiently demonstrated an "imputed" Jewish identity and as a result possesses standing to seek relief under Sections 1981 and 1982.

Moreover, contrary to Okemo's assertions, Sections 1981 and 1982 prohibit discrimination against Jews. When the statutes were enacted, Jews were "considered to be [a] distinct race[ ]" and are thus "within the protection of the statute[s]." <u>Shaare Tefila Congregation v. Cobb</u>, 481 U.S. 615, 617–18 (1987); <u>Saint Francis Coll. v. Al-Khazraji</u>, 481 U.S. 604, 611–13 (1987).

Accordingly, plaintiff's motion to amend and supplement the complaint is granted with respect to the Fifth and Sixth Causes of Action.

D.      Vermont Fair Housing and Public Accommodations Act

Okemo asserts plaintiff's VPAA claim (Seventh Cause of Action) is futile for lack of standing.

The Court disagrees.

The VPAA provides, in relevant part:

> An owner or operator of a place of public accommodation . . . shall not, because of the race, creed, color, national origin, marital status, sex, sexual orientation, or gender identity of any person, refuse, withhold from, or deny to that person any of the accommodations, advantages, facilities, and privileges of the place of public accommodation.

Vt. Stat. Ann. tit. 9, § 4502(a).  The VPAA is "a remedial statute," and it "must be liberally construed in order to suppress the evil and advance the remedy intended by the Legislature." Hum. Rts. Comm'n v. Benevolent & Protective Order of Elks, 176 Vt. 125, 131 (2003).  One of the "evils" the VPAA "seek[s] to suppress is the 'deprivation of personal dignity that surely accompanies denials of equal access to public establishments.'"  Id. (quoting Heart of Atl. Motel, Inc. v. United States, 379 U.S. 241, 250 (1964)).

The VPAA further provides that "[a] person aggrieved by a violation of [the VPAA] . . . may bring an action for injunctive relief and compensatory and punitive damages and any other appropriate relief."  Vt. Stat. Ann., tit. 9, § 4506(a).

The Vermont Supreme Court has not yet determined who or what constitutes "a person aggrieved" for the purposes of the VPAA.  When analyzing other statutes, the court has "looked towards the provisions referenced, the harm the provisions were intended to protect against, and by whom those harms could be suffered" in determining whether a plaintiff is "a person aggrieved" under those statutes.  Severson v. City of Burlington, 210 Vt. 365, 372 (2019) (finding a member of the Burlington Conservation Board was "a person aggrieved" under the

15

Open Meeting Law); see, e.g., State v. Cent. Vt. R.R. Co., 81 Vt. 459, 459 (1908) (finding an "aggrieved party" under a Vermont law regulating railroad charges was "the one from whom the overcharge is demanded and collected").

This standard mirrors the standard adopted by the U.S. Supreme Court in analyzing who possesses standing to assert discrimination claims under federal law.  Namely, the Supreme Court has held a "person aggrieved" encompasses "any plaintiff with an interest arguably sought to be protected by the statute," that is, any person who "falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."  Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 177–78 (2011) (Title VII); accord Bank of Am. Corp. v. City of Miami, 137 S. Ct. 1296, 1304 (2017) (Fair Housing Act).

Drawing from these analogous standards, the Court concludes plaintiff is "a person aggrieved" under the VPAA.

First, the Vermont Supreme Court has held the VPAA should be "construe[d] . . . generously," Hum. Rts. Comm'n v. LaBrie, Inc., 164 Vt. 237, 245 (1995), which suggests that its statutory language should be read broadly rather than narrowly, including the provisions about who can bring claims under the statute.

Second, the VPAA was intended to protect against the harm caused by "denials of equal access to public establishments." Hum. Rts. Comm'n v. Benevolent & Protective Order of Elks, 176 Vt. at 131 (quoting Heart of Atl. Motel, Inc. v. United States, 379 U.S. at 250).  Plaintiff arranges visits to public establishments—here, ski resorts—for its customers.  It has an interest in equal access to public establishments and would be harmed by denial of that access.

Accordingly, plaintiff's motion to amend and supplement the complaint is granted with respect to the Seventh Cause of Action.

## CONCLUSION

The motion to amend and supplement the complaint is GRANTED IN PART and DENIED IN PART.

By November 30, 2021, plaintiff shall file an amended and supplemented complaint consistent with this Opinion and Order. To be clear, plaintiff is granted leave to add the Third, Fifth, Sixth, and Seventh Causes of Action <u>only</u>, and leave to amend or supplement is otherwise denied. Defendant's answer is due December 14, 2021.

The Clerk is directed to terminate the motion. (Doc. #59).

Dated: November 16, 2021
      White Plains, NY

                                        SO ORDERED:

                                        Vincent L. Briccetti
                                        United States District Judge