UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KOSHER SKI TOURS INC., :
                Plaintiff, :
: **OPINION AND ORDER**
v. :
: 20 CV 9815 (VB)
OKEMO LIMITED LIABILITY COMPANY, :
                Defendant. :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff Kosher Ski Tours Inc. ("KST") brings this action against defendant Okemo Limited Liability Company ("Okemo"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and racial discrimination in violation of both 42 U.S.C. §§ 1981 and 1982, and the Vermont Fair Housing and Public Accommodations Act (the "VPAA"), Vt. Stat. Ann. tit. 9, § 4502.

Now pending is Okemo's motion for summary judgment. (Doc. #128).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

The parties have submitted memoranda of law, supporting declarations with exhibits, and statements of undisputed material facts pursuant to Local Civil Rule 56.1, which together reflect the following factual background.[1]

---

[1] Statements of undisputed material facts "will be deemed to be admitted for purposes of the motion unless specifically controverted by" the opposing party, and "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible." Local Civil Rule 56.1(c)–(d). If an opposing party does not "actually dispute" specific statements of material fact or provide a citation to admissible evidence in attempting to do so, the Court may find such statements undisputed. Leeber Realty LLC v. Trustco Bank, 316 F. Supp. 3d 594, 600–01 (S.D.N.Y. 2018), aff'd, 798 F. App'x 682 (2d Cir. 2019) (summary order).

1

I.   Standing Agreement

KST, which is based in Rockland County, New York, organizes group ski tours and vacations, primarily serving Orthodox Jewish customers. Okemo is a ski resort located in Ludlow, Vermont, and is an indirect subsidiary of Vail Resorts, Inc. Since 2014, KST has regularly coordinated with Okemo to obtain group discounts on lodging and lift tickets for its clients.

On October 25, 2019, Okemo and KST entered into the Winter Group Sales Letter of Confirmation. (Doc. #131-3 (the "Standing Agreement")). The Standing Agreement provided for discounted rates on lodging and ski lift tickets from the date of the agreement through April 2022. The Standing Agreement does not confirm any reservations for group lodging or ski lift tickets for any specific date.

II.  Holiday Agreement

On December 30, 2019, Okemo and KST executed the Lodging Agreement. (Doc. #131-4 (the "Holiday Agreement")). The Holiday Agreement provided for the reservation of 159 rooms in Okemo's "Jackson Gore" building between December 10 and December 14, 2020. (Id. at ECF 2).[2] The Holiday Agreement also stated Okemo "is unable to guarantee specific unit/floor/building availability other than unit size and condominium location." (Id. at ECF 3). KST paid an initial deposit of $300 to reserve the rooms and committed to spending a total of $107,831.00.

The Holiday Agreement also contained an explicit force majeure clause:

> Neither party shall be liable in damages or have the right to terminate this Agreement for any delay or default in performing hereunder if such delay or default is caused by

---

[2]   "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

conditions beyond its control including, but not limited to Natural Disasters (floods, hurricane, Earthquakes), Government restrictions (including the denial or cancellation of any export or other necessary license), wars, insurrections and/or any other cause beyond the reasonable control of the party whose performance is affected.

(Holiday Agreement at ECF 5).

III.     The COVID-19 Pandemic

In late July 2020, the parties began discussing the terms of the Holiday Agreement in light of the ongoing COVID-19 pandemic.  In an internal email dated July 27, 2020, an Okemo employee stated she was "worr[ied] that Kosher's group members won't be able to meet the travel restrictions and . . . potential occupancy caps" and expressed doubts about "being able to meet [KST's] expectations" with respect to room assignments.  (Doc. #131-11 at ECF 1–2).  On August 17, 2020, KST told Okemo it still hoped to bring 500 guests to the resort in December 2020.  (Doc. #131-14 at ECF 4).

Two days later, on August 19, 2020, KST expressed concern that rooms described in the Holiday Agreement were available for online booking on Okemo's website.  The next day, Okemo explained it was worried about reserving and taking these rooms off of its website for a group that may not be allowed to arrive in Vermont due to COVID-19 restrictions.  Okemo also asked KST whether it had verbal confirmation from its guests that they would quarantine prior to their arrival.  KST responded that it "would like to put a contract in place and block off the lodging for those dates," and assured Okemo its guests were willing to properly quarantine.  (Doc. #131-14 at ECF 1).

On September 17, 2020, Okemo called KST to say Okemo would not perform its obligations under the Holiday Agreement.  Okemo confirmed this via email the next day, stating it was "not able to accommodate the Kosher Ski Tours Hanukah trip to Okemo December 10 – 14, 2020 and have released [KST] from the $107,831.00 contracted room revenue commitment."

3

(Doc. #131-16 at ECF 1). Okemo noted COVID-19 "continues to disrupt our way of doing business." (Id.). As of September 17, 2020, Vermont had a fifty percent capacity restriction in effect for multi-room lodging operations, but this restriction was lifted on September 18, 2020. A few days prior to this announcement, the Vermont Chamber of Commerce told industry participants it was "expecting a much-needed announcement from the Administration about occupancy." (Doc. #139-6 at ECF 1).

From August to September 2020, there were several internal Okemo communications regarding KST. For example, on August 27, 2020, an Okemo employee wrote in an internal email that Dennis Barquinero, Vail Resorts's Senior Director of Lodging Operations, "said he doesn't believe" KST's clients will comply with applicable COVID-19 restrictions. (Doc. #139-25 at ECF 6). The email also included a link to an article about an Orthodox Jewish summer camp violating COVID-19 guidelines. In September 2020, internal Okemo messages from Wendy Ackerman, Vail Resorts's Northeast Region Resort Reservations Manager, stated "I'm actually not so worried about 70+ [ski club] since they are mid week and not the kosher families who don't take no for an answer in regard to 'our rules,'" and "this is why I [vote] for saying no to kosher tours for December, these people just have no intention of following our rules." (Doc. #139-18 at ECF 1–2). Okemo subsequently approved other group lodging bookings during the 2020–2021 ski season, including for the "70+ ski club," wedding groups, and an antique show.

On February 11, 2021, KST sent Okemo a blank email with a copy of the Standing Agreement.[3] An Okemo employee forwarded KST's email internally and wrote "I have NO plans to write back to him." (Doc. #139-28 at ECF 1). On February 21, 2021, KST emailed

---

[3] By this time, KST had filed a complaint against Okemo in Rockland County Supreme Court for breach of the Holiday Agreement (Doc. #131-21), which was later removed to this Court on November 20, 2020 (Doc. #1).

Okemo regarding room rates and availability for March 30 to April 1, 2021, indicating KST had previously contacted the group office but received no response. Two days later, Okemo asked for additional information about the proposed group size, which KST provided the same day. On March 1, 2021, Okemo responded to KST saying it was "unable to book groups at this time" due to "the applicable regulations and requirements." (Doc. #139-29 at ECF 1).

## DISCUSSION

I.  Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[4]  Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown ex rel. Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "The mere existence of a scintilla of evidence in support" of the non-moving party's position is likewise insufficient; "there must be evidence on which the jury could reasonably find for [him]." Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). Bald assertions, unsupported by admissible evidence, are thus not sufficient to overcome summary judgment. Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II.   Breach of Contract

Okemo argues it is entitled to summary judgment on KST's breach of contract claim because KST anticipatorily repudiated the Holiday Agreement. In the alternative, Okemo argues

(i) it had an undisputed right to terminate the Holiday Agreement under the clear language of the force majeure clause, and (ii) the doctrine of impossibility excused its performance.

The Court disagrees.

A.   Anticipatory Repudiation

Under New York law, "[a]nticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty." Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002).[5] A parties' intention not to perform obligations under a contract must be made "positive and unequivocal." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 112 (2d Cir. 2010). "Generally, whether a particular communication constitutes a repudiation is a question of fact that requires the interpretation of evidence at trial." Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd., __F. Supp. 3d__, 2023 WL 4364450, at *5 (S.D.N.Y. July 6, 2023). However, a court may resolve the issue of repudiation as a matter of law if the statement of repudiation is in writing and the written statement is unambiguous. Id.

Here, Okemo points to two emails as evidence of a clear, written statement of repudiation from KST. (Doc. #129 ("Def. Mem.") at 5–6 (citing Docs. ##131-11, 131-14)). Neither is sufficient evidence to warrant summary judgment.

---

[5] The Court concludes the parties have consented to the application of New York law because they both brief New York law without engaging in any choice-of-law analysis. In a diversity case, the Court must apply the choice-of-law rules of the forum state to determine which state's substantive law should be applied. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 93 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003). Because the parties briefed these issues under New York law, the Court may assume they "consented to the application of the law of the forum state." Id.

First, Okemo argues KST's statement in an August 20, 2020, email to Okemo that it "would like to put a contract in place and block off the lodging for those dates" (Doc. #131-14 at ECF 1), is undisputed evidence of KST's intent to terminate the Holiday Agreement and replace it with a new contract.  But this statement falls well short of an affirmative, unequivocal indication that KST would not perform its obligations under the Holiday Agreement.  See Binder v. S.E. Opportunity Fund LP, (In re 553 W. 174th LLC), 2013 WL 4779194, at *5 (S.D.N.Y. Sept. 4, 2013) (finding attempts to negotiate and confirm contract terms did not constitute anticipatory repudiation).  Rather, a reasonable juror could conclude KST was simply trying to confirm and shore up Okemo's obligation to set aside the rooms it had agreed to reserve in the Holiday Agreement.  See Frontier Airlines, Inc. v. AMCK Aviation Holdings Ir. Ltd., __F. Supp. 3d__, 2023 WL 4364450, at *6 (finding a communication reading more like "a counteroffer" or an "attempt to negotiate an amendment" is "not [an] unequivocal statement of intent to not perform").

Second, Okemo argues a statement in a July 27, 2020, internal Okemo email that Okemo personnel contacted KST personnel who indicated they "want[] to start over the with [sic] contract and the room block" (Doc. #131-11 at ECF 2), is further evidence of KST's unequivocal statement of repudiation.  But this is Okemo's own written summary of an oral conversation between the parties; it is not an unambiguous written statement of repudiation from KST.  Thus, it is insufficient to demonstrate anticipatory repudiation as a matter of law.  See Frontier Airlines, Inc. v. ACMK Aviation Holdings Ir. Ltd., 2023 WL 4364450, at *5.

Accordingly, whether any of KST's statements constituted anticipatory repudiation of the Holiday Agreement is a question of fact to be resolved at trial.

B.      Force Majeure Clause

The purpose of a force majeure clause is "to relieve a party from its contractual duties when its performance has been prevented by a force beyond its control or when the purpose of the contract has been frustrated." Phillips P.R. Core, Inc. v. Tradax Petroleum Ltd., 782 F.2d 314, 319 (2d Cir. 1985). "[W]hen the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of force majeure." Constellation Energy Servs. of N.Y., Inc. v. New Water St. Corp., 146 A.D.3d 557, 558 (1st Dep't 2017). "As the party invoking the doctrine, defendant[] carr[ies] the burden to establish force majeure." Aukema v. Chesapeake Appalachia, LLC, 904 F. Supp. 2d 199, 210 (N.D.N.Y. 2012).

"It is well-established that in order to constitute a force majeure, an event must be the proximate cause of nonperformance of the contract." Hong Kong Islands Line Am. S.A. v. Distrib. Servs. Ltd., 795 F. Supp. 983, 989 (C.D. Cal. 1991); see also 22A N.Y. Jur. 2d Contracts § 386 (2023) ("To relieve a party from liability for nonperformance based on such a clause, the excuse pleaded must also be the proximate cause of the failure to perform."); Optima Media Grp. Ltd. v. Bloomberg L.P., 2021 WL 1941878, at *11 (S.D.N.Y. May 14, 2021); Future St. Ltd. v. Big Belly Solar, LLC, 2020 WL 4431764, at *6 (D. Mass. July 31, 2020) ("Even assuming arguendo that the pandemic and effects of same are a force majeure under the Agreement, [defendant] has not shown that its failure to perform its obligations under the Agreement were caused by same.").

Here, there is a material dispute of fact about whether Okemo's failure to perform was caused by the alleged natural disaster (COVID-19) or if Okemo's failure to perform was caused by discriminatory animus toward KST's clientele. Okemo asserts it is undisputed that it

9

cancelled the Holiday Agreement due to the COVID-19 pandemic.  Although the email chain Okemo cites references the COVID-19 pandemic in releasing KST from its room revenue commitment (Doc. #131-16 at ECF 1 ("I am sad that this virus continues to disrupt our way of doing business.")), KST points to other internal Okemo communications from which a reasonable fact-finder could infer Okemo cancelled the Holiday Agreement because of race-based discrimination (Doc. #139-25 at ECF 6 (stating Okemo "doesn't believe" KST will follow COVID-19 rules and citing an article reporting an Orthodox Jewish summer camp was warned about COVID rule violations); Doc. #139-18 at ECF 1 ("I'm actually not so worried about 70+ [ski club] since they are mid week and not the kosher families who don't take no for an answer in regard to 'our rules.'")).

Accordingly, there is a genuine dispute of material fact as to whether a <u>force majeure</u> event actually caused Okemo's non-performance and, thus, whether the <u>force majeure</u> clause applies here.

      C.     <u>Doctrine of Impossibility</u>

"Under New York law, a defendant may be excused from a contractual obligation where performance is impossible due to the destruction of the means of performance by act of God . . . or by law." <u>Ebert v. Holiday Inn</u>, 628 F. App'x 21, 23 (2d Cir. 2015) (summary order).  "[A] party seeking to rescind a contract must show that the intervening act was unforeseeable, even if the intervening act consisted of the actions of a governmental entity or the passage of new legislation." <u>RW Holdings, LLC v. Mayer</u>, 131 A.D.3d 1228, 1230 (2d Dep't 2015).  "New York courts have construed the impossibility defense very narrowly." <u>Clarex Ltd. v. Natixis Sec. Am. LLC</u>, 988 F. Supp. 2d 381, 393 (S.D.N.Y. 2013).  Indeed, a "chorus of New York courts" has rejected the application of the impossibility doctrine to excuse a party's performance due to

the COVID-19 pandemic and related government restrictions. LMREC III Note Holder, Inc. v. Hudson EFT LLC, 2022 WL 3997017, at *8 (S.D.N.Y. Sept. 1, 2022) (collecting cases).

Here, there is a material dispute of fact regarding the impossibility of Okemo's performance under the Holiday Agreement. Okemo argues the Holiday Agreement provides for the reservation of 159 rooms in the 268-room Jackson Gore building. (Def. Mem. at 11; Doc. #139-2 at ECF 1). Thus, Okemo argues, it would have been physically impossible to comply with Vermont's fifty percent capacity order in place on September 17, 2020, the day it released KST from the Holiday Agreement. (Doc. #139-9 at ECF 1).

On the other hand, the Holiday Agreement explicitly states Okemo "is unable to guarantee specific unit/floor/building availability" (Doc. #139-2 at ECF 2), and Okemo also seems to have contemplated other lodging options, stating that "with potential occupancy caps . . . we would need to be very clear with [KST] that 'all together' might not mean right near each other" (Doc. #131-11 at ECF 1–2). KST also points to the timing of Okemo's decision to cancel the Holiday Agreement—the night before Vermont lifted the fifty percent capacity restriction but three days after the Chamber of Commerce stated it expected an announcement on capacity limits—as further evidence that Okemo could have performed its obligations. Drawing all reasonable inferences in KST's favor, a material dispute of fact exists about whether the relevant COVID-19 restrictions made Okemo's performance under the Holiday Agreement objectively impossible. See LMREC III Note Holder, Inc. v. Hudson EFT LLC, 2022 WL 3997017, at *8 (finding impossibility defense inapplicable when defendants failed to establish "their business was rendered completely inoperable" due to the COVID-19 pandemic).

Accordingly, KST's breach of contract claim may proceed.

III.   Breach of Implied Covenant of Good Faith and Fair Dealing

Okemo argues it is entitled to summary judgment on KST's breach of the covenant of good faith and fair dealing claim because it is undisputed Okemo responded promptly and fairly to KST's reservation inquiries.

The Court disagrees.

A.   Legal Standard

Under New York law, "[i]mplicit in every contract is a covenant of good faith and fair dealing which encompasses any promise that a reasonable promisee would understand to be included." 25 Bay Terrace Assocs., L.P. v. Pub. Serv. Mut. Ins. Co., 144 A.D.3d 665, 667 (2d Dep't 2016).  "The implied covenant of good faith and fair dealing is breached when a party acts in a manner that would deprive the other party of the right to receive the benefits of their agreement."  1357 Tarrytown Rd. Auto, LLC v. Granite Props., LLC, 142 A.D.3d 976, 977 (2d Dep't 2016).  A plaintiff must show something more than a defendant's ignorance or negligence, "such as that the defendant acted arbitrarily or irrationally in exercising the discretion afforded to it under the contract."  Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y, 769 F.3d 807, 818 (2d Cir. 2014).

B.   Analysis

Here, KST's breach of good faith and fair dealing claim is based on Okemo's alleged refusal to accept KST's request to reserve rooms and ski tickets for March 30 to April 1, 2021, under the Standing Agreement.  Okemo argues it responded to KST's email inquiries in a matter of days and declined to make group bookings due to the pandemic.  (Def. Mem. at 16–17).  On the other hand, KST asserts Okemo gave KST the "runaround" and dodged its reservation inquiries in bad faith.  (Doc. #77 at ¶ 53).  Specifically, KST points to a February 11, 2021, email

12

in which Okemo employee Wendy Ackerman stated "I have NO plans to write back to [KST]." (Doc. #139-28 at ECF 1). After receiving no response, KST contacted Okemo again on February 21, 2021, and after exchanging emails about the proposed group size, Okemo denied any group booking by KST, citing "applicable regulations and requirements." (Doc. #139-29 at ECF 1). In contrast, KST points to Okemo emails confirming other group lodging reservations during the 2020–2021 season. A material dispute of fact exists about whether Okemo arbitrarily or irrationally denied KST the benefit of the lodging and ticket rates contemplated in the Standing Agreement. See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc., 769 F.3d at 820 (finding a triable issue of fact where plaintiff established more than merely "the defendant's mismanagement or ineptitude").

Accordingly, KST's breach of implied covenant of good faith and fair dealing claim may proceed.

IV.   Discrimination Under Sections 1981 and 1982

Okemo argues it is entitled to summary judgment on KST's Section 1981 and 1982 discrimination claims because KST cannot establish Okemo's intent to discriminate against Orthodox Jews, and, even if it could, KST cannot establish the alleged discrimination is the but-for cause of its injuries.

The Court disagrees.

A.   Legal Standard

Section 1981 provides: "All persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

13

Section 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

Sections 1981 and 1982 include private rights of action arising from private acts of discrimination. Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459–60 (1975); Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 235, 238–39 (1969).

To establish a violation of Section 1981 or 1982, a plaintiff must set forth facts to demonstrate "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute."[6] Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam); Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 267 (E.D.N.Y. 2009).

Moreover, a plaintiff must demonstrate that, "but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020). There may be more than one but-for cause of a discriminatory action. See Banks v. Gen. Motors, LLC, 81 F.4th 242, 275 (2d Cir. 2023) (noting, in the context of a Section 1981 claim, "the but-for causation test is a sweeping standard and that often, events have multiple but-for causes").

---

[6] Contrary to defendant's assertion, "[o]nce a plaintiff meets this initial burden, the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination. If defendant does so, the burden returns to the plaintiff to show that the real reason for plaintiff's termination was his race." Ruiz v. Cnty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010) (applying McDonnell-Douglas burden-shifting framework to Section 1981 claim). However, the Court need only address KST's prima facie case because it finds there is a genuine dispute of material fact at this stage of the analysis.

B.     Analysis

Here, the parties dispute material facts regarding (i) Okemo's intent to discriminate against KST and its Orthodox Jewish clientele, and (ii) whether KST can establish race was the but-for cause of its alleged injuries.[7]

First, Okemo argues there is no evidence it intended to discriminate against KST, and KST's mischaracterizations of the evidence are insufficient to raise a genuine dispute of material fact. But KST points to several emails and messages from Okemo employees explicitly referencing KST's Orthodox Jewish clientele in the context of denying room reservations. In particular, KST points to: (i) an email stating Dennis Barquinero, Vail Resorts's Senior Director of Lodging Operations, "said he doesn't believe [KST]" when it confirmed its clients will comply with applicable COVID restrictions and attaching a link to an article about an Orthodox Jewish summer camp violating COVID restrictions (Doc. #139-25 at ECF 6); (ii) messages from Wendy Ackerman, Vail Resorts's Northeast Region Resort Reservations Manager, stating "I'm actually not so worried about 70+ [ski club] since they are mid week and not the kosher families who don't take no for an answer in regard to 'our rules,'" and "this is why I [vote] for saying no to kosher tours for December, these people just have no intention of following our rules" (Doc. #139-18 at ECF 1–2); and (iii) emails confirming Okemo approved lodging for other groups during the 2020–2021 season, such as the 70+ ski club (Doc. #139-35 at ECF 1), weddings (Doc. #139-34 at ECF 1), and an antique show (Doc. #139-31), while denying a group booking of any size group to KST (Doc. #139-20 ("I have not been able to gather a count that is acceptable to

---

[7]     As this Court previously ruled, Sections 1981 and 1982 prohibit discrimination against Jews, including Orthodox Jews, and KST qualifies as a "member of a racial minority" for purposes of those statutes. Kosher Ski Tours Inc. v. Okemo LLC, 2021 WL 5326527, *7 (S.D.N.Y. Nov. 6, 2021).

[Barquinero].")). These documents are sufficient to create a genuine dispute of material fact as to Okemo's intent in denying KST's bookings.

Second, Okemo argues even if KST can establish discriminatory intent, it cannot establish discriminatory animus was the but-for cause of Okemo's decision to invoke the force majeure clause in the Holiday Agreement and refuse group bookings under the Standing Agreement. However, as discussed above, the record reflects that Okemo allowed other similarly situated groups to reserve group lodging during the 2020–2021 season, yet refused all such bookings for KST. Drawing all reasonable inferences in KST's favor, as the Court must at this stage, there is a genuine factual dispute about the but-for cause of Okemo's decision to deny KST lodging. Thus, summary judgment on these claims is inappropriate. See Karupaiyan v. CVS Health Corp., 2023 WL 5713714, at *21 (S.D.N.Y. Sept. 5, 2023) (denying the defendant's motion for summary judgment because "it is the role of the jury" to determine whether the evidence is sufficient to establish but-for causation).

Accordingly, KST's discrimination claims under Sections 1981 and 1982 may proceed.

V. Discrimination Under the Vermont Fair Housing and Public Accommodations Act

Okemo argues it is entitled to summary judgment on KST's VPAA claim because there is no evidence KST's members were denied access to Okemo and, in the alternative, Okemo cannot be liable under the statute because the VPAA states access to a public accommodation may be denied where a person directly threatens the health or safety of others.

The Court disagrees.

A. Legal Standard

The VPAA provides:

> An owner or operator of a place of public accommodation . . . shall not, because of the race, creed, color, national origin, marital status, sex, sexual orientation, or gender identity of any person, refuse, withhold from, or deny to that person any of

16

the accommodations, advantages, facilities, and privileges of the place of public accommodation.

Vt. Stat. Ann. tit. 9, § 4502(a).

The VPAA also exempts the owner of a public accommodation from providing access to an individual who "poses a direct threat to the health or safety of others." Vt. Stat. Ann. tit. 9, § 4502(h). To determine whether an individual poses a "direct threat," a public accommodation must "make an individualized assessment based on reasonable judgement," considering: "(1) the nature, duration and severity of the risk; (2) the probability that the potential injury will actually occur; and (3) whether reasonable modifications of policies, practices, or procedures will mitigate the risk." Id.

    B.    Analysis

Despite Okemo's arguments to the contrary, there is a material factual dispute about whether KST and its clientele were denied access to Okemo's facilities during the 2020–2021 season. Okemo emphasizes that, according to KST's amended complaint (Doc. #77 at ¶ 57), KST's Orthodox Jewish clientele were still able to book lodging at Okemo on an individual basis during the relevant time period. However, KST plausibly alleges these individual bookings, made via phone and Internet, corroborate its discrimination claims because Okemo was unable to discern the customer's race or religion at the time of booking. (Id.). Separately, Okemo misunderstands the nature of KST's standing here. KST does not bring claims on behalf of injuries to its clientele. Rather, KST alleges it was itself targeted—and thus, suffered a personal injury—because it serves Orthodox Jewish clientele. This is proper. See Tower Props. LLC v. Village of Highland Falls, 2015 WL 4124499, at *5 (S.D.N.Y. July 7, 2015) (Section 1981 and 1982 claims). Moreover, Okemo does not dispute KST as an entity was denied access to Okemo. (Doc. #132 at ¶¶ 29, 52–53).

17

Next, Okemo argues it is "undisputed that KST and its over 500 guests posed a direct threat to the health or safety of others," such that Okemo is exempt from compliance with Section 4502(a). (Def. Mem. at 23). But the VPAA requires the owner of a public accommodation to make an "<u>individualized</u> assessment" to determine "whether an <u>individual</u> poses a direct threat to the health or safety of others." Vt. Stat. Ann. tit. 9, § 4502(h) (emphasis added); <u>cf</u>. <u>Bhatt v. Univ. of Vt.</u>, 2006 WL 6047606, at *1 (Vt. Super. Ct. Dec. 22, 2006) (granting summary judgment under Section 4502(h) where the dean of a medical school specifically determined plaintiff "posed an unacceptable risk to patients"). Okemo puts forth no evidence it conducted any such individualized assessment before it made the decision to release KST from the Holiday Agreement and refuse any size group booking under the Standing Agreement. Okemo offers only conclusory statements about the danger of COVID-19 in general and cites an expert report produced during this litigation. (Def. Mem. at 23 (citing Doc. #131-37)). This is insufficient to establish an affirmative defense at this stage. See <u>Paquette v. Regal Art Press, Inc.</u>, 656 A.2d 209, 210–11 (Vt. 1994) (finding lower court erroneously granted judgment on the pleadings on a Section 4502 claim when "there were no facts properly before the court" to support defendant's affirmative defense); <u>see also</u> <u>Washington v. Pierce</u>, 179 Vt. 318, 323 (2005) ("We recognize that, as a remedial statute, the [VPAA] must be liberally construed in order to suppress the evil and advance the remedy intended by the Legislature.").

Accordingly, KST's discrimination claim under the VPAA may proceed.

VI.     <u>Recovery of Lost Future Profits for Breach of Contract Claim</u>

Okemo argues it is undisputed KST cannot prove lost future profits as damages for its breach of contract claim because the parties did not contemplate this type of damages when they made the Holiday Agreement.

18

The Court agrees.

A. Legal Standard

Under New York law, a plaintiff seeking recovery of lost future profits on a breach of contract claim must show: (1) the damages were caused by the breach "with certainty"; (2) the amount of damages are "capable of proof with reasonable certainty"; and (3) "the particular damages were fairly within the contemplation of the parties to the contract at the time it was made." Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261 (1986) (per curiam). "In the absence of any provision [providing for lost future profits], the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." Id. at 262.

B. Analysis

Here, even if KST could prove causation and the amount of damages with reasonable certainty, KST has submitted no evidence the parties contemplated lost future profits when the Holiday Agreement was executed. Damages are only mentioned once in the Holiday Agreement, where it states "[n]either party shall be liable in damages" in the event of a force majeure. (Doc. #139-2 at ECF 4). And nothing else in the record suggests the parties would have allocated lost future profits amongst themselves in the event of a breach. See Trademark Rsch. Corp. v. Maxwell Online, Inc., 995 F.2d 326, 334 (2d Cir. 1993) (finding the plaintiff's "lost profits claim fails for the independent reason that liability for such damages were not fairly contemplated by the parties" when "[t]he record contain[ed] no specific evidence that . . . the parties ever discussed lost profits liability"). Nor does KST respond to Okemo's arguments on this point in its opposition. See Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of N.Y., 2018 WL 654445, at *11 (E.D.N.Y. Jan. 31, 2018) (finding the defendant entitled to summary

19

judgment because plaintiff failed to address defendant's arguments in its summary judgment opposition briefing).

Accordingly, KST cannot recover lost future profits for its breach of contract claim.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

All of KST's claims shall proceed, except that KST cannot recover lost future profits for its breach of contract claim.

A case management conference is scheduled for January 16, 2024, at 11:00 a.m. The conference will proceed in person, at the White Plains courthouse, Courtroom 620. Counsel shall be prepared to discuss the setting of a trial date and a schedule for pretrial submissions, as well as what efforts they have made and will continue to make to settle this case.

The Clerk is directed to terminate the motion. (Doc. #128).

Dated: December 18, 2023
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge