UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KOSHER SKI TOURS INC.,
                    Plaintiff,

v.

OKEMO LIMITED LIABILITY COMPANY,
                    Defendant.
--------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER**

20 CV 9815 (VB)

Briccetti, J.:

    Plaintiff Kosher Ski Tours Inc. ("KST") brings this action against defendant Okemo Limited Liability Company ("Okemo"), alleging claims for breach of contract; breach of the implied covenant of good faith and fair dealing; and racial discrimination in violation of 42 U.S.C. §§ 1981 and 1982, and the Vermont Fair Housing and Public Accommodations Act (the "VPAA"), Vt. Stat. Ann. tit. 9, § 4502. Trial is scheduled to commence on September 23, 2024.

    Now pending is KST's motion in limine for spoliation sanctions pursuant to Federal Rule of Civil Procedure 37(e). (Doc. #164).

    For the following reasons, KST's motion is GRANTED to the following extent: The Court will (i) allow the parties to present evidence to the jury about the loss of electronically stored information ("ESI") and the likely relevance thereof, and (ii) instruct the jury that it may consider that evidence in making its decision.

## BACKGROUND

    On October 19, 2020, KST filed suit in New York State Supreme Court asserting a claim for breach of contract. The action was removed to this Court on November 11, 2020.

    Prior to initiating the action, on October 7, 2020, KST's counsel sent a demand letter to the general counsel at Vail Resorts, Inc., stating: "We intend to file an action against Okemo no later than October 16, 2020 if Okemo does not immediately honor the Lodging Agreement and

1

compensate KST for the losses it has already incurred." (Doc. #166-10 at ECF 1).[1] The letter explains that KST was informed by email on September 18, 2020, that Okemo could not accommodate the reservations outlined in the Lodging Agreement due to business disruptions caused by COVID-19. The letter further states KST "intend[s] to explore in discovery whether there were other improper motives for the sudden termination of the Lodging Agreement." (Id. at 3 n.2).

Okemo claims it "first became aware of litigation with KST on or about October 23, 2020," and, on October 30, 2020, placed a "legal hold" on employees reasonably believed to have information relevant to the breach of contract claim asserted in the original complaint, the purpose of which was to preserve ESI in those employees' possession. (Doc. #166-1 ¶¶ 7, 11, 12). After further investigation, Okemo learned that its employees Wendy Ackerman and Amy Morgan might have relevant information about the parties' claims or defenses and added them to the pending legal hold on January 20, 2021—93 days after the suit was filed. (Id. ¶ 13). At that time, Okemo had a maximum email retention period of 90 days. (Doc. #166-2).

On July 9, 2021, KST requested leave to amend its complaint to add discrimination claims based on recently produced documents. (Doc. #54). The Court granted that request (Doc. #76), and the first amended complaint was filed on November 22, 2021 (Doc. #77).

## DISCUSSION

KST argues Okemo failed to preserve relevant ESI of Ackerman and Morgan and should be sanctioned pursuant to Rule 37(e).

The Court agrees.

---

[1] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

I.    <u>Legal Standard</u>

Rule 37(e) states when a party fails to take reasonable steps to preserve ESI that should have been preserved in anticipation of litigation, and that ESI is lost and cannot be restored or replaced through additional discovery, a court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1), (2).

Thus, Rule 37(e) requires "a three-part inquiry": (i) whether "a party failed to take reasonable steps to preserve [ESI] that should have been preserved in the anticipation or conduct of litigation"; (ii) whether "there has been prejudice to another party from loss of the information, in which case the Court may order measures no greater than necessary to cure the prejudice"; and (iii) regardless of prejudice, "whether the destroying party acted with the intent to deprive another party of the information's use in litigation," in which case the court may consider the imposition of the sanctions listed in Rule 37(e)(2). <u>Coan v. Dunne</u>, 602 B.R. 429, 438 (D. Conn. 2019).[2]

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." <u>Fujitsu Ltd. v. Fed. Exp. Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001). When

---

[2]    Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

counsel receives a communication explicitly stating a party intends to initiate a lawsuit, the duty to preserve is triggered. Europe v. Equinox Holdings, Inc., 592 F. Supp. 3d 167, 176 (S.D.N.Y. 2022). "For the purposes of Rule 37(e), 'relevance' means relevance for purposes of discovery, which is an extremely broad concept." Cruz v. G-Star Inc., 2019 WL 4805765, at *11 (S.D.N.Y. Sept. 30, 2019).

With respect to prejudice, Rule 37(e) "does not place a burden of proving or disproving prejudice on one party or the other." Fed. R. Civ. P. 37(e)(1) adv. comm. note to 2015 amendment. "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Id.

Appropriate sanctions under Rule 37(e)(1) include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e)(1) adv. comm. note to 2015 amendment. Curative measures imposed under Rule 37(e)(1) should not rise to the level of the more severe sanctions permitted under Rule 37(e)(2).

"A party seeking sanctions under subsection (e)(2) bears the burden to show by clear and convincing evidence that the alleged spoliator acted with the intent to deprive the movant of the information for use in the litigation." Europe v. Equinox Holdings, Inc., 592 F. Supp. 3d at 175. Intent may be inferred "when a party has significantly failed in its obligation to preserve and collect documents" or "when the data loss cannot be credibly explained other than by bad faith." Id.

II.   Analysis

As an initial matter, KST's motion is not untimely. Although the Court acknowledges the motion was filed well after the close of discovery, the sanctions KST seeks relate directly to the presentation of spoliation evidence at trial, which was not imminent until recently. In addition, Okemo's characterization of the motion as "tantamount to pretrial ambush" is incorrect. At a pretrial conference on January 25, 2024, KST specifically stated it intended to bring a spoliation sanctions motion when the Court asked for the basis of any anticipated motions in limine.

The Court addresses the three-step inquiry for Rule 37(e) sanctions below.[3]

A.   Duty to Preserve ESI Relevant to This Litigation

Okemo failed to take reasonable steps to preserve ESI that should have been preserved in anticipation of this litigation. "A party's duty to preserve is based on a two-part inquiry: (1) when did the duty to preserve arise, and (2) what evidence was the party obligated to preserve?" Lokai Holdings LLC v. Twin Tiger USA LLC, 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018). There is no question that Okemo's duty to preserve all ESI relevant to this litigation was triggered when it received KST's October 7, 2020, demand letter explicitly threatening suit. (Doc. #166-10). Once the duty to preserve is triggered, that party must "preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." Id. at *10.

---

[3]   Rule 37(e) applies only to situations in which the lost ESI "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). The parties do not dispute that Ackerman and Morgan's emails are irretrievable and cannot be replaced by additional discovery.

Here, relevant information to the breach of contract claim asserted in the original complaint would include all email communications—between decision-makers and non-decision-makers alike—regarding the Lodging Agreement. In addition, because Ackerman and Morgan attended weekly management meetings in the months leading up to the termination of the Lodging Agreement, Okemo knew or should have known that Ackerman and Morgan's emails were relevant or potentially relevant to KST's breach of contract claim.[4]

B.  Prejudice as a Result of the Loss of ESI

KST is prejudiced by this loss of information. Even if Ackerman and Morgan were not the final decision-makers, they were participants at weekly meetings when relevant discussions regarding the Lodging Agreement occurred. This means that their emails may have documented the statements of the alleged decision-makers, as well as their own commentary about the meetings. And the handful of relevant chat messages that were produced between Ackerman and Morgan confirm they used email to communicate about the meetings during the relevant time period. This ESI could have been helpful in documenting the contemporaneous reasoning behind Okemo's decision to terminate the Lodging Agreement—information that is relevant to the breach of contract claim. See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., 337 F.R.D. 47, 66 (S.D.N.Y. Sept. 30, 2020) (finding prejudice when the plaintiff "provided evidence that plausibly suggests that the spoliated ESI could support its case").

---

[4] Okemo argues it was not on notice of plaintiff's discrimination claims when Ackerman and Morgan's emails were deleted because the discrimination claims were not brought in the original complaint. KST points to a footnote in its demand letter alluding to possible improper motives for Okemo's breach of the Lodging Agreement. Because the Court finds Okemo knew or reasonably should have known the emails were relevant or potentially relevant to the breach of contract claim, the Court need not address when Okemo was on notice of the discrimination claims.

As such, Okemo's argument that KST has failed to show the deleted emails are relevant is unavailing. KST cannot prove the specific contents of the emails because Okemo failed to preserve them, and the Court will not allow Okemo to benefit from its failure to do so. See Ottoson v. SMBC Leasing & Fin., Inc., 268 F. Supp. 3d 570, 580 (S.D.N.Y. 2017) ("The prejudiced party must not be held to too high a strict standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would allow parties who have destroyed evidence to profit from that destruction."). KST is prejudiced as it is now forced to rely on a few chat messages from Ackerman and Morgan over the relevant time period, instead of a full email record.

    C.    Intent to Deprive KST of ESI for Use in This Litigation

The Court finds KST has not shown by clear and convincing evidence that Okemo acted with the intent to deprive it from using Ackerman and Morgan's emails in this litigation. To be sure, one possible inference that may be drawn based on the evidence is that Okemo intentionally allowed the 90-day retention period to expire—especially given that the litigation hold on Ackerman and Morgan's ESI was instituted 93 days after the complaint was filed, effectively ensuring that all pre-litigation ESI had been deleted. However, this evidence does not rise to the level of clear and convincing. Although the timing is suspect, there are credible explanations for this delay other than bad faith. See Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., 337 F.R.D. at 67 ("[T]hese acts can be credibly explained as involving gross negligence rather than bad faith."). For example, taking Okemo at its word, the delay in the implementation of a litigation hold on Ackerman and Morgan's ESI can be explained by the fact that the results of Okemo's initial investigation into KST's breach of contract claim did not reveal their

involvement, but upon further investigation, it became apparent their ESI was potentially relevant.

Although the Court finds KST failed to present clear and convincing evidence that Okemo's actions were taken for the specific purpose of gaining an advantage in this litigation, the Court nonetheless finds that Okemo's conduct with respect to preserving Ackerman and Morgan's emails is sanctionable under Rule 37(e)(1).

III.   Remedy

"Once a party has demonstrated its entitlement to sanctions, the Court has broad discretion in selecting an appropriate remedy among those available." Doubleline Cap. LP v. Odebrecht Fin., Ltd., 2021 WL 1191527, *11 (S.D.N.Y. Mar. 30, 2021). Here, the Court finds the appropriate remedy is "allowing the parties to present evidence to the jury concerning the loss and likely relevance of information and instructing the jury that it may consider that evidence, along with all the other evidence in the case, in making its decision." Fed. R. Civ. P. 37(e)(2) adv. comm. note to 2015 amendment. More specifically, KST will be permitted to present evidence to the jury concerning Ackerman and Morgan's emails that were not preserved, and the gaps in information left by the failure to preserve their emails, and the jury will be permitted to consider that evidence, along with the other evidence in this case, in evaluating witness credibility and making other factual determinations. The Court will also specifically instruct the jury that it may consider such evidence.

This sanction is sufficient but "no greater than necessary to cure the prejudice" to KST caused by the loss of Ackerman and Morgan's emails. Fed. R. Civ. P. 37(e)(1). It will "help rectify the evidentiary imbalance" created by Okemo and provide the jury "with context for that evidentiary imbalance, which is itself relevant evidence going to the parties' credibility and other

factual issues." Karsch v. Blink Health Ltd., 2019 WL 2708125, at *27 (S.D.N.Y. June 20, 2019). However, the Court will not allow this spoliation issue to balloon into a "trial within a trial," and will ensure the parties do not present needlessly cumulative evidence on this issue. See id. (explaining that the trial judge is "free to determine the precise scope of the spoliation evidence to be permitted at trial").

Because KST failed to show by clear and convincing evidence that Okemo intended to deprive KST of the ESI for use in this litigation, the Court will not provide an adverse inference instruction only contemplated under Rule 37(e)(2). The Court also denies KST's request for an order prohibiting Okemo from presenting any testimony or evidence contradicting KST's allegations that Okemo was motivated by unlawful discrimination. This request is "overly harsh, in that it would potentially preclude testimony and other evidence wholly unaffected by the spoliation underlying plaintiff's motion." Charlestown Cap. Advisors, LLC v. Acero Junction, Inc., 337 F.R.D. at 69. Finally, KST's request for attorney's fees related to this motion and the deleted emails is also denied, as KST has not shown that an award of attorney's fees is necessary to address the prejudice caused by the spoliation. Cf. Karsch v. Blink Health Ltd., 2019 WL 2708125, at *26.

## CONCLUSION

KST's motion for spoliation sanctions is GRANTED to the following extent: The Court will (i) allow the parties to present evidence to the jury about the loss of the ESI and the likely relevance thereof, and (ii) instruct the jury that it may consider that evidence in making its decision.

By September 10, 2024, the parties shall submit a joint proposed jury instruction regarding the spoliation evidence.

The final pretrial conference in this case shall proceed as scheduled on September 17, 2024, at 11:00 a.m., at which time the Court will address the parties' remaining motions in limine.

The Clerk is directed to terminate the motion. (Doc. #164).

Dated: August 22, 2024
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge